# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

```
_____
                                        )
BARBARA BATES and BONNIE BELL,          )
                                        )
            Plaintiffs,                 )
                                        )
      v.                                )        Civil Action No. 04-2116  (RBW)
                                        )
NORTHWESTERN HUMAN                      )
SERVICES, INC., et al. ,                )
                                        )
            Defendants.                 )
_____)
```

## MEMORANDUM OPINION

Barbara Bates and Bonnie Bell, the plaintiffs in this civil lawsuit,[1] bring this action

against Northwestern Human Services, Inc. ("Northwestern") and its two wholly-owned

subsidiaries, Northwestern Human Services of Lehigh Valley, Inc. ("Lehigh Valley") and NHS

MidAtlantic, Inc. ("MidAtlantic"), asserting various statutory, regulatory and common law

violations in connection with the defendants' alleged "misappropriation," "misuse," and "loss"

of the plaintiffs' benefits payments and other funds while acting as the plaintiffs' certified mental

health rehabilitation services provider and "representative payee" under the Social Security Act,

42 U.S.C. §§ 301-306, 401-418, 421-434, 501-504, 601-619, 621-626, 628-629i, 651-660, 663-

679b, 681-686, 701-710, 901, 903-904, 906, 909-913, 1001-1013, 1101-1110, 1201-1206, 1301-

1324, 1351-1355, 1381-1383f, 1391-1397jj (2000).   Amended Complaint (the "Am. Compl.")

¶¶ 1-5.  Currently before the Court is the defendants' motion to dismiss Count I of the plaintiffs'

---

[1]  The plaintiffs allege that they have brought this civil lawsuit "for themselves and as the representatives of [a] class of similarly situated persons."  Amended. Complaint ¶ 1.  However, the Court denied the plaintiff's motion for class certification filed in connection with their original complaint in an order entered on December 11, 2006, and the plaintiffs have not renewed their motion since the filing of their amended complaint.  Thus, the only plaintiffs before the Court at this time are Bates and Bell.

complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  After carefully considering the plaintiffs' amended complaint, the defendants' motion to dismiss, and all memoranda relating to that motion,[2] the Court concludes that it must grant the defendants' motion and further concludes that it must dismiss the plaintiffs' complaint in its entirety for the reasons set forth below.

## I. Background

The following facts are alleged by the plaintiffs in their amended complaint or are matters of public record.  The "representative payee" provisions of the Social Security Act provide that an individual's benefit payments can be made to a duly certified fiduciary for the individual's "use and benefit" if the Commissioner of the Social Security Administration "determines that the interest of [the] individual . . . would be served thereby."  42 U.S.C. § 405(j)(1)(A); see also id. § 1383(a)(2)(A)(ii)(I) (stating that "[u]pon a determination by the Commissioner of Social Security that the interest of [an eligible] individual would be served thereby, such [benefit] payments shall be made . . . to [a representative payee] for the use and benefit of the individual"); 20 C.F.R. § 404.2001 (2007) ("explain[ing] the principles and procedures that [the Social Security Administration] follow[s] in determining whether to make representative payment and in selecting a representative payee . . . [and] the responsibilities that a representative payee has concerning the use of the funds . . . receive[d] on behalf of a beneficiary"); id. § 416.601 (same).  To be appointed as a representative payee, applicants must undergo an investigation by the Social Security Administration and demonstrate "adequate

---

[2]  In addition to the plaintiffs' amended complaint, the defendants' motion to dismiss, and the documents considered by the Court in issuing its prior memorandum opinion, see Bates v. Nw. Human Servs., Inc., 466 F. Supp. 2d 69, 71 n. 1 (D.D.C. 2006) (listing pleadings) ("Bates I"), the Court also considered the following documents in reaching its decision: (1) the Defendants' Memorandum of Law in Support of Their Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) (the "Defs.' Mem."), (2) the Plaintiffs' Memorandum of Points and Authorities in Opposition to Defendants' Motion to Dismiss Plaintiffs' Amended Complaint (the "Pls.' Opp'n") and (3) the Defendants' Reply Memorandum of Law in Support of their Motion to Dismiss Plaintiffs' First Amended Complaint (the "Defs.' Reply").

evidence that such certification is in the interest of" the individual for whom representative payee status is sought.  42 U.S.C. § 405(j)(2)(A)(ii); see also id. § 1383(a)(2)(B)(ii) (same); 20 C.F.R. § 404.2020-2024 (listing factors to be considered by the Social Security Administration in determining the "person, agency, organization or institution that will best serve the interest of the beneficiary" as a representative payee); id. § 416.620-416.624 (same); 42 U.S.C. § 405(j)(2)(C)(v) (stating which representative payee applicants are given preferential treatment by the Social Security Administration); id. § 1383(a)(2)(B)(vii) (same); 20 C.F.R. § 404.2021 (same); id. § 416.621 (same).

Once appointed, representative payees are authorized to receive an individual's benefit payments for the "use and benefit" of the individual in light of the Social Security Administration's relevant guidelines.  42 U.S.C. § 405(j)(1)(A); id. § 1383(a)(2)(A)(ii)(I) (same); 20 C.F.R. § 404.2035  (explaining the Social Security Administration's guidelines with respect to the representative payee's fiduciary responsibilities); id. § 416.635 (same).   Accordingly, the payees are subject to "a system of accountability monitoring" under which they are forbidden from "misus[ing]" an individual's benefit payment in any way.  42 U.S.C. § 405(j)(3)(A); see also id. § 1383(a)(2)(A)(iv) (stating that "misuse of benefits by a representative payee occurs in any case in which the representative payee receives payment . . . for the use and benefit of another person and converts such payment" to another use).  The payees are also required to report to the Social Security Administration at least once per year "with respect to the use of such payments."  42 U.S.C. § 405(j)(3)(A); id. § 1383(a)(2)(C)(i) (same).

The plaintiffs are "resident[s] of the District of Columbia" who are "poor, unemployed, and disabled due to mental illness."  Am. Compl. ¶¶ 8-9.   As a result, the plaintiffs "rel[y] on government benefits payments, including monthly payments by the Social Security

Administration, to obtain basic living necessities such as food, clothing and shelter." Id.  The District of Columbia, required by federal and District of Columbia statutes "to provide integrated, comprehensive, and coordinated mental health services to District of Columbia residents, including the homeless mentally ill," id. ¶ 22; see also 24 U.S.C. § 225 (2006) (provision requiring mental health services); D.C. Code § 44-901 (2005) (same), "passed the Department of Mental Health Establishment Amendment Act," which "established . . . the Department of Mental Health ([the] 'DMH')," Amended Compl. ¶ 24, and "requires [the] DMH, either through itself or through agents, to provide a comprehensive system of mental health care to [District of Columbia] residents," id. ¶ 25; see also D.C. Code § 7-1131.01-1131.15a (implementing the statutory requirements).  According to rules promulgated by the DMH, the mental health rehabilitation services "shall be administered solely by the District of Columbia, and are to be provided . . . by the DMH, or by DMH-certified providers." Id. ¶ 26.

Northwestern and its wholly-owned subsidiaries, Lehigh Valley and MidAtlantic, are three providers "certified by the District of Columbia to provide mental health rehabilitation services to [the p]laintiffs and other [District of Columbia residents] on its behalf."  Am. Compl. ¶¶ 10-12.  "[D]uring the respective time periods in which [the defendants] acted as [DMH-]certified mental health rehabilitation services providers . . . to [the p]laintiffs,"[3] the defendants "applied to the Social Security Administration to be appointed as

---

[3]  Although there is no indication in the amended complaint of the date or dates during which the defendants provided mental health services to the plaintiffs, the plaintiffs allege that Northwestern was certified generally by the DMH "to provide mental health services to the [p]laintiffs and others on its behalf . . . [o]n or about December 13, 1996." Am. Compl. ¶ 10.  The plaintiffs further allege that Lehigh Valley "succeeded [Northwestern] as the certified provider of mental health services to [the p]laintiffs and the [c]lass" when it was certified by the DMH "on or about July 13, 1999," and that MidAtlantic succeeded Lehigh Valley "on or about February 14, 2003." Id. ¶¶ 11-12.  The plaintiffs also allege that "[a]t all times after their respective authorizations, the [d]efendants were acting under color of state law on behalf of the [District of Columbia] when providing mental health services." Id. ¶ 29.  The defendants' status as mental health providers is alleged to have terminated on June 30, 2004, when Northwestern made good on its promise to the DMH that it would close its MidAtlantic office and "curtail its operations in the District of Columbia." Id. ¶ 45.

[the p]laintiffs' . . . representative payee[s] for [their] benefits payments pursuant to 42 U.S.C. §§ 405 and 1383," id. ¶ 33, and were approved by the Social Security Administration thereafter, id. ¶ 34. The plaintiffs allege that the defendants would not have been appointed as a representative payee "but for their status as [DMH-] certified mental health rehabilitation services providers." Id. ¶ 33.

As representative payees, the defendants acted in a "fiduciary capacity" for the plaintiffs and received "hundreds of thousands of dollars in federal and other benefits," over which they exercised "exclusive control" along with "all records" relating thereto. Id. ¶ 34. The plaintiffs make numerous allegations with respect to how the defendants "mismanaged, misappropriated and misused the[se] . . . funds . . . and thereby deprived the [p]laintiffs . . . of the benefits to which they were entitled." Id. ¶ 37. Most notably, they argue that the defendants failed to "comply with federal and other laws relating to their status as representative payee," id., and instead used the funds to pay for a variety of expenses not connected with the provision of goods or services to the plaintiffs, ultimately "le[aving] the jurisdiction without returning all of the [p]laintiffs' . . . funds," id. ¶ 38. Further, the plaintiffs allege that the defendants "failed to implement policies or procedures to enable them to account properly for [the p]laintiffs' . . . funds," id. ¶ 39, which caused the plaintiffs to "lose their federal benefits altogether, and thereby incur damages," id. ¶ 40.

The plaintiffs filed their original complaint in this Court on December 6, 2004, asserting violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1962-1968 (2000) ("RICO"), Complaint ¶¶ 48-83, § 1983, id. ¶¶ 84-90, 42 U.S.C. §§ 405 and 1383, along with the regulations implementing those statutory provisions, id. ¶¶ 91-104, and common law claims for breach of fiduciary duty, negligence, and conversion, id. ¶¶ 110-122. The plaintiffs

further claimed that "[t]he [d]efendants owe[d the p]laintiffs monies had and received from the federal government and other entities as [the p]laintiffs' representative payees," <u>id.</u> ¶ 124.  They demanded, <u>inter alia</u>, compensatory and punitive damages, <u>id.</u> ¶¶ (iii)-(vi), injunctive relief, <u>id.</u> ¶ (ii), and "an accounting by an independent expert . . . of all federal benefits payments and other amounts received by the [d]efendants as the representative payees . . . of the [p]laintiffs," <u>id.</u> ¶ (i).

In a memorandum opinion issued on December 11, 2006, in response to the defendants' motion to dismiss, the Court concluded that it had to dismiss the plaintiffs' claims under §§ 405 and 1383 with prejudice because those provisions "[did] not create privately enforceable remedies," and had to dismiss the plaintiffs' RICO and § 1983 claims without prejudice because the facts alleged by the plaintiffs in their complaint did not suffice to state a claim under these statutes.  <u>Bates v. Nw. Human Servs., Inc.</u>, 466 F. Supp. 2d 69, 105 (D.D.C. 2006) ("<u>Bates I</u>"). The Court further concluded that the plaintiffs should be granted leave to file an amended complaint re-asserting their RICO and § 1983 claims if they so desired, and that the balance of the defendants' motion to dismiss should be denied.  <u>Id.</u>  The Court entered an order effectuating that memorandum opinion the same day.  <u>Bates v. Nw. Human Servs., Inc.</u>, Civil Action No. 04-2116 (RBW), slip order at 1-2 (D.D.C. Dec. 11, 2006).

In accordance with the Court's direction, the plaintiffs filed an amended complaint on February 5, 2007.  In their amended complaint, the plaintiffs reassert their § 1983 claim against the defendants as well as their common law claims for accounting, breach of fiduciary duty, negligence, conversion, and money had and received.  Am. Compl. ¶¶ 47-73.[4]  With respect to their § 1983 claim, the plaintiffs allege that the defendants, "standing in the shoes of the District

---

[4]  The plaintiffs do not assert any RICO violations in their amended complaint.  <u>See</u> Am. Compl. ¶¶ 47-73 (claiming six causes of action against the defendants, none of which are for RICO violations).

of Columbia as a provider of [g]overnment mental health services, were acting as State actors

when they applied and were appointed as the representative payee for the [p]laintiffs . . . , when

they received [their] funds, and when they [later] misappropriated those funds."  Id. ¶ 52.

     The defendants filed their motion to dismiss the plaintiffs' amended complaint on March

13, 2007.  In support of their motion, the defendants argue that (1) neither the defendants' "status

as . . . certified mental health provider[s] nor [their] status as . . . representative payee[s] is

sufficient . . . to make [the defendants] . . . state actor[s]" for purposes of § 1983, Defs.' Mem. at

4, (2) even assuming the defendants were deemed state actors with respect to their role as

medical service providers, that would not translate into state action with respect to their "separate

and distinct role[s] as [the p]laintiffs' representative payee[s,]" id., and (3) even if the defendants

were found to be state actors as the plaintiffs' representative payees, the § 1983 claim would

nevertheless be barred because the statutes relied upon by the plaintiffs do not "create any

relevant private rights," and "the statutes that regulate representative payees . . . incorporate an

exclusive government enforcement scheme," id.

     In opposition, the plaintiffs argue that their amended complaint demonstrates the

"interrelatedness between [the d]efendants' status as a [DMH-]certified [mental health

rehabilitation services] [] provider[s] and . . . representative payee[s] for [the p]laintiffs," and

proves that the "[d]efendants' role in assisting [the p]laintiffs . . . with respect to financial

management . . . was part and parcel of their role . . . as [] [DMH-]certified mental health

rehabilitation services provider[s] for these individuals."  Pls'. Opp'n at 3-4.  The plaintiffs

further allege that the defendants misappropriated funds in both their capacities as representative

payees and as mental health rehabilitation services providers.  Id. at 4.  In response to the

plaintiff's opposition to their motion to dismiss, the defendants reiterate that they were "not

engaged in state action when [they] allegedly misappropriated [the p]laintiffs' benefits payments while serving as their representative," and that § 1983 fails to create a private remedy for violations of the Social Security Act.  Defs.' Reply at 1.

## II. Standard of Review

As the Court previously noted, the defendants seek dismissal of Count I of the plaintiffs' amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  On a motion to dismiss under Rule 12(b)(6), the Court "must treat the complaint's factual allegations as true and must grant [the] plaintiff[s] the benefit of all reasonable inferences [that can be derived] from the facts alleged." Trudeau v. FTC, 456 F.3d 178, 193 (D.C. Cir. 2006) (internal quotation and citation omitted).  Factual challenges are not permitted under Rule 12(b)(6); instead, the Court may only consider the factual allegations set forth in the complaint, any documents attached as exhibits thereto (or incorporated therein), and matters subject to judicial notice in weighing the merits of the motion.   EEOC v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624-25 (D.C. Cir. 1997).  The Court's focus is therefore restricted to the facts as alleged by the plaintiff, which must be sufficiently detailed "to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, ___U.S. ___ , ___, 127 S. Ct. 1955, 1965 (2007).

## III. Analysis

The defendants seek to dismiss only one of the six counts in the plaintiffs' amended complaint, Def.'s Mem. at 1; however, that count (Count I) is the only claim arising under federal law that is asserted by the plaintiffs.  See Am. Compl. ¶¶ 54-73 (seeking recovery under various District of Columbia common law causes of action).  Consequently, the Court's resolution of the defendants' motion has important implications for the case as a whole, for without Count I the Court must re-assess whether it has subject-matter jurisdiction over the

remaining claims in the plaintiffs' amended complaint.  The Court therefore begins its analysis

with a discussion of the merits of the defendants' motion before turning to the issue of subject-

matter jurisdiction with respect to Counts II-VI of the amended complaint.

A.      The Plaintiffs' § 1983 Claim

The defendants seek dismissal of the plaintiffs' § 1983 claim on the grounds that the acts

allegedly committed by the defendants, even if true, did not occur under color of state law and

did not deprive the plaintiffs of rights secured by federal law.  Defs.' Mem. at 4.  Section 1983

provides in relevant part that:

> Every person who, under color of any statute, ordinance,
> regulation, custom or usage, of any State or Territory or the
> District of Columbia, subjects, or causes to be subjected, any
> citizen of the United States . . . to the deprivation of any rights,
> privileges, or immunities secured by the Constitution and laws,
> shall be liable to the party injured in an action at law, suit at equity,
> or other proper proceeding for redress.

42 U.S.C. § 1983.  Accordingly, "[t]o state a claim under § 1983, a plaintiff must allege the

violation of a right secured by the Constitution and laws of the United States, and must show that

the alleged deprivation was committed by a person acting under color of state law."  West v.

Atkins, 487 U.S. 42, 47 (1988); see also  Nelson v. Campbell, 541 U.S. 637, 643 (2004)

(articulating the two elements of § 1983 liability).

With one limited exception not applicable here,[5] § 1983's requirement that a person act

under color of State, territorial or District of Columbia law "has consistently been treated as the

same thing as the 'state action' required under the Fourteenth Amendment."  Rendell-Baker v.

---

[5]  The District of Columbia Circuit has held that the § 1983 color of state law analysis is generally the same as the state action analysis under the Fourteenth Amendment, but that in some circumstances "the under-color-of-state-law doctrine may cast a somewhat wider net than does the state-action requirement."  Williams v. United States, 396 F.3d 412, 415 (D.C. Cir. 2005).  However, this potential expansion of § 1983's reach arises only in the context of cases in which the constitutionality of a statute itself is challenged, id. at 416, which is not an issue in this case.

Kohn, 457 U.S. 830, 842 (1982) (internal quotation and citation omitted).  To constitute state

action, "the deprivation [alleged by a plaintiff] must be caused by the exercise of some right or

privilege created by the State or by a person for whom the State is responsible, and the party

charged with the deprivation must be a person who may fairly be said to be a state actor."  West

v. Atkins, 487 U.S. at 49 (1988) (internal quotation and citation omitted).

In the past, the Supreme Court "has articulated a number of different factors or tests in

different contexts" for determining when a private party's acts should be attributed to the state,

Lugar v. Edmondson Oil Co., Inc., 457 U.S. 922, 939 (1982), but the Court has more recently

described these very same factors or tests as "a host of facts" which can indicate "the fairness of

such an attribution," Brentwood Acad. v. Tenn. Sec. Sch. Athl. Ass'n, 531 US 288, 295-296

(2001).  Whether these labels are described as factors, tests, or "a host of facts," the Supreme

Court has regularly found that private action is fairly attributable to the state only when one of

the following has occurred: when a private actor is subjected to the "coercive power" of the state

or "significant encouragement, either overt or covert[]" by the State; "when it is controlled by an

agency of the State;" when a private actor "is entwined with governmental policies or when

government is entwined in its management or control;" or when a private actor "has been

delegated a public function by the State."  Id. (internal quotations and citations omitted).  Under

any factual scenario, however, "[w]hat is fairly attributable to the state is a matter of normative

judgment, and the criteria lack rigid simplicity."  Id. at 295.

Accordingly, "[t]here is no clear formula for determining what situations transform

otherwise private actors into state actors for the purposes of constitutional analysis."  Brug v.

Nat'l Coal. for Homeless, 45 F. Supp. 2d 33, 42-43 (D.D.C. 1999).  As a result of the lack of

"rigid simplicity," Brentwood, 531 U.S. at 295, or any "clear formula," Brug, 45 F. Supp. 2d at

42-43, the state action analysis is a "necessarily fact-bound inquiry," Lugar, 457 U.S. at 939.

And when conducting this fact-bound inquiry, courts must "begin[] by identifying the specific

conduct of which [the] plaintiff complains," Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 51

(1972) (internal quotation and citation omitted), because the defendant must not merely be a state

actor in some general capacity, but rather must be a state actor when performing the specific acts

alleged in the complaint, see Brentwood, 531 U.S. at 295 (holding that "state action may be

found if, though[] only if, there is such a close nexus between the State and the challenged action

that seemingly private behavior may be fairly treated as that of the state itself" (internal

quotation marks and citation omitted) (emphasis added)).

      The plaintiffs argue that the defendants were state actors because they performed a public

function and "enjoyed a symbiotic relationship with the [District of Columbia] government."

Pls.' Opp'n at 15.  They contend that the defendants became state actors when the District of

Columbia government delegated the provision of such services to the defendants by certifying

them as mental health rehabilitative service providers because "the provision of mental health

services to poor, mentally ill[,] and homeless District of Columbia residents like [the] [p]laintiffs

is and always has been a mandatory District of Columbia government function."  Id. at 12-13.

The plaintiffs then offer a transitive theory of state action, contending that the defendants were

state actors as representative payees because they used their status as District of Columbia-

certified mental health rehabilitation services providers to become representative payees and

would not have become representative payees but for their status as state actors.  Id. at 10, 15.

According to the plaintiffs, the District of Columbia government "selected, certified, extensively

regulated, and referred clients" to the defendants, and that "[t]he [District of Columbia]

government financially benefited from this relationship."  Id. at 15.

Each of the plaintiffs' arguments fails to establish that the defendants were state actors for the same reason: both improperly focus on the defendants' role as the plaintiffs' DMH-certified mental health rehabilitation services provider instead of their role as representative payee for the plaintiffs' social security disability benefits.  As this Court has previously stated, the federally protected right at issue here is the plaintiffs' "entitlement to federal benefits payments under the Fifth and Fourteenth Amendments and the Social Security Act," not "the plaintiffs' right to receive mental health services."  Bates I, 466 F. Supp. 2d at 95.  And although the defendants served the plaintiffs in two distinct roles, as both "their DMH-authorized service provider" and as "their [Social Security Administration]-certified representative payee[,] . . . the plaintiffs' allegations relating to the misappropriation of their federal benefits payments directly implicates only the second of these roles and not the first."  Id.

        In their amended complaint, the plaintiffs themselves reaffirm the distinction between the defendants' two roles, stating very clearly that "the [d]efendants . . . mismanaged, misappropriated and misused the federal payments and other funds that they received as [the] [p]laintiffs' . . . representative payees[.]"  Am. Compl. ¶ 37.  Yet, in their opposition to the defendants' motion to dismiss, the plaintiffs improperly focus on the defendants' role as DMH-certified mental health rehabilitation services providers.  The plaintiffs' errant focus not only misses the mark identified by this Court in its prior ruling in this case, but also ignores the instructions of the Supreme Court and the District of Columbia Circuit that the determination of whether an act is fairly attributable to the state should be based upon "the challenged action," Brentwood, 531 U.S. at 295, and "the specific conduct of which the plaintiff complains," Am. Mfrs. Mut. Ins. Co., 526 U.S. at 51, rather than the defendant's general status.  Because the plaintiffs do not allege facts that would permit an inference of state action with respect to the

defendants' conduct as representative payees, the Court must dismiss Count I of the plaintiffs'

amended complaint for failure to state a claim under § 1983.

B.      Subject-Matter Jurisdiction over Remaining Claims

"A district court may choose to retain jurisdiction over, or dismiss, pendent state law

claims after federal claims are dismissed." Shekoyan v. Sibley Int'l, 409 F.3d 414, 423 (D.C.

Cir. 2005). "[I]n the usual case in which all federal-law claims are dismissed before trial, the

balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy,

convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the

remaining state-law claims." Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988).

Given the early procedural posture of this case and the lack of any apparent prejudice to the

plaintiffs in forcing them to pursue their remaining claims in the Superior Court of the District of

Columbia, the Court discerns no reason why it should depart from the "usual" practice in this

case. Id. The Court will therefore dismiss the remaining counts in the plaintiffs' amended

complaint for lack of subject-matter jurisdiction.

## IV.  Conclusion

For the reasons stated above, the Court concludes that the facts as alleged in the

plaintiffs' amended complaint do not demonstrate that the defendants' acts occurred under the

color of state law.  Accordingly, the plaintiff's § 1983 claim must be dismissed.  The Court will

also dismiss the remaining counts of the amended complaint, as they provide no for this Court's

subject-matter jurisdiction.  The Court will therefore dismiss the plaintiffs' amended complaint

in its entirety.

**SO ORDERED** this 28th day of October, 2008.[6]

REGGIE B. WALTON
United States District Judge

---

[6] An order will be issued contemporaneously with this memorandum opinion (1) granting the defendants' motion to dismiss, (2) dismissing Count I of the plaintiffs' complaint and dismissing <u>sua</u> <u>sponte</u> the remaining counts in the plaintiffs' complaint without prejudice, and (3) closing this case.